UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

UNITED STATES OF AMERICA,

      Plaintiff,

    v.                        Case No. 17-CR-84 (JPS)

TRAVIS S. VACCARO,

      Defendant.
_____

## MOTION TO SUPPRESS EVIDENCE

Travis Vaccaro, by undersigned counsel, respectfully moves this Court, pursuant to the Fourth Amendment of the United State Constitution, for the entry of an order suppressing all evidence and derivative evidence, including all statements of Vaccaro, obtained as a result of the unlawful pat down search of Vaccaro and subsequent search of his car by Milwaukee police on February 9, 2017.

In support of this motion, Vaccaro invites the Court's attention to the following.

### Background

On February 9, 2017, at about 7:00 p.m., Milwaukee Police Officers Tracy and Frantal were on patrol on Milwaukee's South Side driving eastbound on W. Lincoln Avenue. As they approached the intersection of W. Lincoln and Windlake Avenue, they saw a black Mercedes Benz stop at the stop light, which was red, and then drive

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

directly through the light, according to Tracy's report.[1] *See* Exhibit A, BATES 000039 ("BATES"). The officers immediately initiated a traffic stop, which occurred when Vaccaro, who was driving the black Mercedes, pulled over right away at 1403 W. Lincoln. The officers saw Vaccaro moving within the car. Tracy wrote that Vaccaro dipped "his whole body forward, at the waist, and make a reaching movement with both his hands towards the front passenger floor area." *Id.* While there has been no in-squad camera recording from Tracy and Frantal's vehicle turned over to the defense, both officers activated their body cameras.[2] These recordings do not reveal what movements Vaccaro made that the officers claim to have scene.

Officer Tracy's body-camera recording shows that the officers pulled to a stop behind Vaccaro's vehicle several seconds after Vaccaro came to a stop and they immediately got out of their squad. *See* Exhibit B, AXON_Flex_Video_2017-02-09_1855, at 00:20. The recording depicts Tracy getting out of the squad and saying to Frantal, "yeah, pull him out." The video shows Vaccaro complying with Frantal's instructions to show his hands and to get out of the car. *Id.*, at 00:55. The officers immediately had Vaccaro face his vehicle with his hands behind his back while they handcuffed and pat frisked him. Officer Frantal felt an ankle bracelet and asked

---

[1] Although Vaccaro is attaching the police report and using its contents to establish the context for the traffic stop of Vaccaro, the search of his car, and his arrest, the defense is not conceding to the accuracy of the facts stated therein.

[2] Officer Tracy's recording starts before that of Officer Frantal recording and ends several minutes after, so it records more of the event. Undersigned counsel will provide this recording for the Court as Exhibit B, which is labeled "AXON_Flex_Video_2017-02-09_1855."

Vaccaro what he was on probation for, and Vaccaro said "false imprisonment." *See* BATES, at 000039.

Officer Tracy asked Vaccaro about his movements in the car. Vaccaro denied putting anything in a glove box; he just took off his jacket. *See* Exhibit B at 01:10. Then Tracy told him, "we're gonna search your car, we're gonna find whatever's in there, OK?" *Id.*, at 01:30. Tracy repeatedly asked Vaccaro whether there was a gun in the car. Vaccaro responded, "I don't have any," and then, "I just got pulled over." *Id.*, at 02:15. Tracy again asked about Vaccaro's movements in the car, and again Vaccaro said he was taking off his coat. *Id.*, at 02:30. Vaccaro was not asked to consent to the search and didn't offer it.

The officers then walked the handcuffed Vaccaro back to their squad and shut the door. *Id.*, at 03:09. Officer Tracy walked back to Vaccaro's car and began to search the driver's side front passenger compartment. *Id.*, at 03:24. In the meantime, Frantal called in the traffic stop, citing "rules of the road" as the apparent basis. *See* Exhibit C, Milwaukee Police Department CAD Report, p. 1. Then, Tracy, who could not get into the car's center console, asked Frantal if Vaccaro had any other keys. Frantal walked back toward Tracy and apparently looked into the back seat of Vaccaro's car and said, "Keys? I don't believe so. He's got a fuckin' rifle in the back? That's a rifle case." *See* Exhibit B, at 04:20. Tracy bent down to look, and said, "yup, looks like it," and as he removed Vaccaro's jacket from on top of the case he said,

3

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.
Case 2:17-cr-00084-JPS   Filed 06/14/17   Page 3 of 7   Document 14

"yup, that's a rifle." *Id.* The officers then opened the rifle case and found the gun, a wood stock, lever-action Marlin GA 30, 30-30 rifle. *See* BATES, p. 39. Frantal called dispatch to inform them that they'd found a firearm. *See* Exhibit C, p. 1. The officers continued searching the vehicle including the trunk. Vaccaro was removed from the scene and taken to the District 2 station.

## Issues

First, Officers Tracy and Frantal conducted a traffic stop of Vaccaro, immediately got him out of his car, handcuffed and frisked him. The Fourth Amendment's protection against "unreasonable searches and seizures" extends to "brief investigatory stops of persons or vehicles." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). The police may detain a person and frisk him only if two conditions are met. First, the investigatory stop must be lawful. That is the officer must reasonably suspect that the person seized is committing or has committed a criminal offense, or as here, a traffic violation. Second, to proceed from a seizure to a frisk, the police officer must reasonably suspect that the person seized is armed and dangerous. See *Arizona v. Johnson*, 555 U.S. 323, 326-7 (2009). As a preliminary matter, Vaccaro concedes that the officers had a lawful basis for the traffic stop: Vaccaro drove through a red traffic light. However, the officers' actions in immediately escalating the stop to include a pat frisk were not justified by the totality of the circumstances.

Second, Tracy and Frantal searched Vaccaro's vehicle without a warrant and without consent. Warrantless searches and seizures are presumptively unreasonable and the government bears the burden of establishing that an exception to the warrant requirement authorized the officers' action in this case. *E.g. United States v. Basinski,* 276 F.3d 829, 833-34 (7th Cir. 2000). An officer may search a vehicle's passenger compartment when he has reasonable suspicion that an individual, whether or not the arrestee, is "dangerous" and might access the vehicle to "gain immediate control of weapons." *Arizona v. Gant*, 566 U.S. 332, 346-347 (2009) (quoting *Michigan v. Long*, 463 U.S. 1032, at 1049 (1983)). Vaccaro was stopped for a routine traffic violation. During the several seconds from when he stopped his car to when the officers approached him, the officers claim he moved within his car. He was also cooperative and answered their questions. He was alone with two officers at 7:00 on a winter night. These circumstances did not provide justification to search his car for a weapon.

*Long*'s requirement of present dangerousness is based on the premise set forth in *Terry v. Ohio*, 392 U.S. 1 (1968) that the search must be genuinely protective and not evidentiary; the latter is inappropriate, and can't be justified by *Long*. *United States v. Hussain*, 835 F.3d 307, 313 (2nd Cir. 2016).

Third, if Vaccaro was under arrest, the search could only be justified if there had been probable cause to believe his vehicle contained evidence of criminal

activity. *Arizona v. Gant*, 566 U.S., at 347. Again, the officers lacked such probable cause.

As a result of the unlawful search of Vaccaro and his vehicle, all evidence and derivative evidence must be suppressed. That would include the rifle that was found in Vaccaro's vehicle and all statements that he made in custody later on February 9, 2017. It also would include evidence obtained by officers as a result of those statements that would not have been discovered were it not for the Fourth Amendment violation.

Vaccaro asserts an evidentiary hearing is required to develop the facts necessary for the Court to determine whether the officers' initial pat frisk was justified, whether the officers placed Vaccaro under arrest prior to the search, whether the search of his car was unconstitutional, and other facts necessary to determine whether the government can meet its burden of establishing an exception to the warrant requirement. Undersigned counsel believes that the hearing would take about two hours.

Undersigned counsel has conferred with AUSA Melvin Washington pursuant to Crim. Local Rule 12(c). The government believes the officers' actions in searching both Vaccaro and his vehicle were constitutionally justified. Beyond the legality of not of the searches, there appear to be a number of factual matters the parties contest.

Dated at Milwaukee, Wisconsin, this 14th day of June, 2017.

Respectfully submitted,

**/s/ John W. Campion**
John W. Campion, Bar No. 1002697
FEDERAL DEFENDER SERVICES
    OF WISCONSIN, INC.
517 E. Wisconsin Avenue, Room 182
Milwaukee, Wisconsin 53202
Telephone: 414-221-9900
Fax: 414-221-9901
E-mail: john_campion@fd.org

Counsel for Travis S. Vaccaro