# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                        Case No. 17-CR-84

TRAVIS S. VACCARO

    Defendant.

## RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS

On May 2, 2017, a grand jury sitting in the Eastern District of Wisconsin returned an indictment charging defendant Travis Vaccaro with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Docket # 1.) Vaccaro has pled not guilty and a jury trial before the Honorable J P Stadtmueller has been adjourned pending resolution of pretrial motions. Presently before me is Vaccaro's motion to suppress evidence seized from a warrantless search of his vehicle. (Docket # 14.) I conducted an evidentiary hearing and the parties submitted post-hearing briefs. For the reasons that follow, I recommend that the defendant's motion to suppress be denied.

## BACKGROUND

The facts underlying this motion stem from a February 9, 2017 Milwaukee Police traffic stop of Vaccaro. At the evidentiary hearing, Milwaukee Police Officers Aaron Frantal and Matthew Tracy testified. In addition, video footage from the officers' body cameras is in evidence as Exhibit 14.

*Officer Aaron Frantal*

Officer Frantal has been a police officer for the city of Milwaukee for approximately six years. (Tr. 4.) Officer Frantal testified that he and Officer Tracy came into contact with Vaccaro after conducting a traffic stop on February 9, 2017 around 7:00 p.m. (Tr. 6.) Officer Frantal drove and Officer Tracy rode in the front passenger seat. (*Id*.) Officer Frantal testified that he observed Vaccaro's vehicle, a black Mercedes, while driving eastbound on West Lincoln at approximately South 14th Street. (Tr. 7.) He stated that Vaccaro was in the same lane as the officers about three-quarters to half a city block in front of their squad car (*Id*.) He further testified that he observed Vaccaro turn into the right-hand lane and drive through a red light at an intersection. (Tr. 8.) After seeing Vaccaro run the red light, Officer Frantal activated his emergency lights signaling Vaccaro to stop his vehicle. (*Id*.)

Officer Frantal testified that Vaccaro abruptly pulled his car over and parked at an angle to the sidewalk. (Tr. 9.) He stated that his senses were heightened because Vaccaro initially slowed down at the red light before driving through the intersection. (Tr. 9-10.) After activating his spotlight (Tr. 12) Officer Frantal testified that he noticed Vaccaro make "furtive" movements toward the front passenger side of the floorboard immediately upon him stopping. (Tr. 11). On cross examination, Officer Frantal stated there was a temporary license plate on the back driver's side window and four headrests that partially obstructed his view. (Tr. 86.) He further testified that he noticed Vaccaro make a "ferocious" move toward the front passenger side before making another "aggressive" move with his torso and arms into the back seat of his vehicle. (Tr. 11.) Officer Frantal stated that based on his training and experience, he believed Vaccaro was either attempting to conceal contraband, arm himself, or both. (Tr. 12.)

2

He further testified that due to Vaccaro's actions, he immediately exited his vehicle, drew his service pistol, and ordered Vaccaro to show his hands. (Tr. 13.) Next, Officer Frantal ordered Vaccaro to open the driver's door and exit his vehicle. (Tr. 14.) He testified that he ordered Vaccaro to exit his vehicle because he believed that Vaccaro possibly armed himself based on movements Vaccaro made when he stopped his vehicle. (Tr. 15.) He further stated that upon approaching Vaccaro's vehicle, he was afraid for him and Officer Tracy's safety. (*Id.*)

After Vaccaro exited the vehicle, Officer Frantal handcuffed him and conducted a pat-down search. (Tr. 16.) After being handcuffed, Vaccaro informed him that he took off his jacket. (Tr. 67.) While performing the pat-down search, Officer Frantal discovered a GPS monitoring bracelet on Vaccaro's left ankle. (Tr. 16.) Officer Frantal stated that he asked about the ankle bracelet and Vaccaro informed him that he was on supervision for false imprisonment. (*Id.*) Officer Frantal further testified that he understood false imprisonment was a felony. (Tr. 17.) Officer Frantal stated that while he was performing the pat-down, Officer Tracy began asking Vaccaro if he had any firearms in the vehicle. (*Id.*) Vaccaro was not answering Officer Tracy's questions. (Tr. 18.) Officer Frantal stated that Vaccaro's lack of response heightened his cautiousness. (*Id.*) He further testified that based on his experience, when individuals do not answer questions and "freeze up" like Vaccaro did, it is highly probable that there is some threat in the immediate area. (*Id.*)

Officer Frontal testified that he was standing to the immediate left of Vaccaro during the pat-down search. (Tr. 16.) After the pat-down search, Officer Frantal looked into the vehicle through the front and scanned to the back. (Tr. 19.) He testified that he noticed a soft camouflage rifle case in the back seat of the vehicle. (*Id.*) Officer Frantal further testified

3

that the rifle case was lying horizontally on the back seat. (Tr. 23.) He stated that there was a black jacket covering the middle of the rifle case, but he was able to see the barrel area of the case. (*Id.*) Officer Frantal further stated that he kept this observation to himself because he did not want to further agitate Vaccaro. (Tr. 19.)

Officer Frantal testified that Vaccaro appeared very agitated and made statements about people trying to kill him. (*Id.*) Officer Frantal testified that based on his experience, when you announce to an agitated person that you have observed contraband, it is highly probable that that person may try to flee or fight with the officers. (Tr. 20.) With Vaccaro handcuffed, he and Officer Tracy placed Vaccaro in the back of the squad car. (*Id.*) On cross examination, Officer Frantal stated that at the point of shutting the door, he considered Vaccaro secured. (Tr. 81.) When Vaccaro was placed in the squad car, he began screaming obscenities and appeared agitated. (Tr. 21.) Officer Frantal stated that he was still concerned for his safety because Vaccaro did not appear fully stable. (*Id.*)

Officer Frantal testified that after placing Vaccaro in the back of the squad car, he informed dispatch of the traffic stop and relayed general information such as their location, type of vehicle, and license plate. (*Id.*) Next, Officer Frantal approached Officer Tracy who was searching the front of Vaccaro's vehicle. (*Id.*) Officer Frantal testified that the protocol under these circumstances was to conduct a probable cause search of the vehicle to confirm whether there was a gun in the rifle case. (Tr. 22.) After informing dispatch, Officer Frantal walked to Officer Tracy to confirm if there was a rifle in the case. (Tr. 23.) On cross examination, Officer Frantal stated that he called dispatch again about 10 to 15 seconds after it was confirmed that the case contained a rifle. (Tr. 86.) After Officer Tracy opened

4

and confirmed that a rifle was inside the case, Officer Frantal requested a camera in order to take pictures of the entire incident. (Tr. 24.)

On cross examination, Officer Frantal clarified that the reasons that gave him probable cause to search the vehicle were Vaccaro running through the red light, making two aggressive movements upon stopping, and the discovery that Vaccaro was on probation for a felony. (Tr. 58.) Officer Frantal stated that about two seconds went by between Vaccaro parking his car and Officer Frantal parking the squad car. (Tr. 65.) Officer Frantal stated that he observed the rifle case prior to placing Vaccaro in the squad car. (Tr. 59.) Officer Frantal reiterated that his senses were heightened because of Vaccaro's abrupt stop. (Tr. 71-72.) When asked about the possibility of Vaccaro having mental issues, Officer Frantal testified that his experience led him to believe that Vaccaro was under the influence of an illegal narcotic. (Tr. 76.) He further stated that in his experience, individuals with mental illnesses generally cannot answer basic questions. (*Id.*) He stated that Vaccaro was able to answer the questions asked, but simply seemed paranoid. (*Id.*)

*Officer Matthew Tracy*

Officer Tracy has been a police officer for the City of Milwaukee for 10 years. (Tr. 95.) Officer Tracy testified that he first came into contact with Vaccaro when he and Officer Frantal conducted a traffic stop. (Tr. 96.) He further stated that they were alerted because Vaccaro drove through a red light. (*Id.*) Officer Tracy stated that when Vaccaro stopped the vehicle and Officer Frantal activated the spotlight, the officers could clearly observe the interior of the vehicle. (Tr. 97.) Officer Tracy testified that he could see Vaccaro bending over at the waist, reaching towards the front passenger side, and turning around to reach towards the rear of the vehicle. (Tr. 97-98.) He stated that Vaccaro made a 180 degree turn.

5

(Tr. 112.) He further testified that he was alarmed by the movements and figured Vaccaro was attempting to arm himself. (Tr. 98.) For safety reasons, Officer Tracy told Officer Frantal that they should have Vaccaro exit the vehicle. (Tr. 99.) While Officer Frantal was conducting the pat-down search, he began asking Vaccaro a series of questions. (Tr. 101.) He further testified that Officer Frantal discovered the GPS monitor on Vaccaro's ankle. (*Id.*)

Officer Tracy stated that Vaccaro would not respond when he asked him whether he had a firearm in his vehicle. (Tr. 103.) Instead of answering, Vaccaro placed his head on the roof of the vehicle. (*Id.*) Officer Tracy then recalled hearing Vaccaro stating "I don't have anything." (Tr. 135.) Officer Tracy stated that he was alarmed by Vaccaro appearing extremely nervous and making statements that people were trying to kill him. (*Id.*) Officer Tracy testified that based on his behavior, he believed that Vaccaro was under the influence of drugs. (Tr. 104.) He further testified that in his experience, people under the influence of drugs act in a paranoid state. (Tr. 105.) Officer Tracy stated that because of Vaccaro's paranoid state, he believed there was a possibility of Vaccaro grabbing his partner's gun, physically assaulting the officers, or fleeing. (*Id.*)

Officer Tracy testified that after asking Vaccaro several times whether he had a firearm, he noticed the rifle case in the back seat of the vehicle. (Tr. 106.) After observing the rifle case and being told that he was on supervision for false imprisonment, Officer Tracy had suspicions that Vaccaro was a felon in possession of a firearm. (Tr. 110.) He further testified that he made the observation of the firearm prior to Vaccaro being taken to the squad car. (Tr. 107.) Officer Tracy stated that a jacket was covering part of the rifle case, but he could observe the barrel area of the rifle case. (Tr. 112.) After seeing the rifle case,

Officer Tracy was even more concerned for his safety and the safety of his partner. (*Id.*) He stated that he did not immediately alert Officer Frantal that he observed the rifle case because he did not want to further agitate Vaccaro. (*Id.*)

After securing Vaccaro in the squad car, Officer Tracy conducted a search of the vehicle. (Tr. 108.) Officer Tracy testified that he began searching the front passenger floor because of Vaccaro's movements in that direction. (*Id.*) He also stated that did not retrieve the rifle case in the back seat because he wanted to search for other evidence and usually does sweeps from front to back. (Tr. 123.) Officer Tracy stated that seeing the rifle case changed the scope of his search because the officers were going to have the car towed for an inventory search. (Tr. 110.) He further testified that after Officer Frantal asked about the case, Officer Tracy interrupted his search of the front compartment. (Tr. 123.) He then smashed down on the case and confirmed that it was a rife in the case. (*Id.*)

## ANALYSIS

Vacarro does not contest that he was lawfully stopped for a traffic violation. Indeed, police may reasonably conduct a warrant-less stop of an automobile if they have probable cause to believe that a traffic violation has occurred. *Whren v. United States*, 517 U.S. 806, 810 (1996). Here, both officers testified that they observed Vaccaro drive through a red light. (Tr. 6, 96.)

Instead, Vaccaro moves for suppression on two grounds. First, he argues that the officers did not have reasonable suspicion that he was armed and dangerous to frisk him. (Def.'s Motion at 10, Docket # 32.) Second, he argues that the officers did not have reasonable suspicion to search the vehicle. (*Id.* at 13.) I will address each in turn.

7

1. *Pat-Down Frisk of Vaccaro*

During a valid traffic stop, an officer may order the driver and passengers out of the vehicle. *Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977). The officers may also frisk the driver and any passengers upon reasonable suspicion that they may be armed and dangerous. *United States v. Brown*, 188 F.3d 860, 864 (7th Cir. 1999). Whether an officer has a reasonable suspicion to support a frisk "'is a fact-specific inquiry that looks at the 'totality of the circumstances' in light of common sense and practicality.'" *United States v. Tinnie*, 629 F.3d 749, 751 (7th Cir. 2011) (quoting *United States v. Robinson*, 615 F.3d 804, 807–08 (7th Cir. 2010)). In determining whether an officer had reasonable suspicion, courts consider "'the circumstances known to the officer at the time of the stop, including the experience of the officer and the behavior and characteristics of the suspect.'" *Id*. at 751-52 (quoting *United States v. Lawshea*, 461 F.3d 857, 859 (7th Cir. 2006)). The time and the location of the stop are also relevant to the reasonable suspicion inquiry. *Id*. at 752.

In this case, Vaccaro argues that the police officers did not have reasonable suspicion to frisk him. (Docket # 32 at 10.) The government responds that Vaccaro's actions after the stop gave the police reason to fear for their safety. Specifically, the government points to the alleged "furtive" movements Vaccaro made before being ordered to exit his vehicle.

It is true that furtive movements in a car during a traffic stop can justify a pat-down. *United States v. Kenerson*, 585 F.3d 389, 392 (7th Cir. 2009); *United States v. Burton, 441 F.3d 509, 512* (7th Cir. 2006); *United States v. Williams*, 76 Fed. Appx. 728, 730, 2003 WL 21801422 at *3 (7th Cir. July 30, 2003). It is also important to note that a mere incantation of "furtive gestures" is not enough. The police officer must articulate specific facts. Here, Officer Frantal testified that after Vaccaro stopped the car, Vaccaro made a "ferocious"

move toward the front passenger side before making another aggressive move with his torso and arms into the back seat of the vehicle. (Tr. 11.) Similarly, Officer Tracy testified that he saw Vaccaro reaching towards the front passenger side before then reaching towards the back seat. (Tr. 97-98.) The two officers' testimony are consistent with each other. Moreover, Vacarro's own statement to the police that he was merely taking off his jacket confirms this portion of the officers' testimony that they observed Vaccaro moving in the car. I, therefore, credit this aspect of the officers' testimony. As a finder of fact, the court may accept or reject any or all of a witness's testimony. *See United States v. Berthiaume*, 233 F.3d 1000, 1004 (7th Cir. 2000).

Even if the movement was brief, as Vaccaro points out, an officer need not be certain the person is armed and dangerous. Rather, the officer must be able to point to particular facts from which he reasonably inferred that the individual is armed and dangerous. Based on the officers' testimony that they observed Vaccaro moving in the car after stopping and on Vaccaro's own statement that he was taking off his jacket, I find the officers' testimony that Vaccaro appeared to be making furtive gestures credible. I also find it credible that a reasonable officer could conclude from the observed movements that Vacaaro was potentially either reaching for a firearm, hiding a firearm, or potentially armed and dangerous. Because the officers had articulable reasonable suspicion that Vaccaro might be armed and dangerous, Vaccaro's Fourth Amendment rights were not violated by the pat-down search.

    2.    *Probable Cause to Search Vaccaro's Vehicle*

*Next*, Vaccaro argues that the police officers did not have reasonable suspicion to search his vehicle. (Docket # 32 at 13.) If police officers reasonably believe that a motorist is

dangerous, the officer may search the areas where the passenger may either gain immediate control or have concealed a weapon. *United States v. Fryer*, 974 F.2d 813, 819 (7th Cir. 1992) (citing *Michigan v. Long*, 463 U.S. 1032, 1049 (1983)) (internal citation omitted). The search is limited to "those areas in which a weapon may be placed or hidden." *United States v. Arnold*, 388 F.3d 237, 239 (7th Cir. 2004) (citing *Long*, 463 U.S. at 1049)). Furthermore, the officer must possess specific, articulable facts, along with inferences drawn from those facts, that reasonably warrant the search. *Id*. (internal citations omitted)).

Here, the officers testified that Vaccaro's furtive gestures toward the front and back of car, status as person on supervision, and their observation of a barrel of a rifle case justified the search of Vaccaro's car. I begin with the officers' testimony that they observed the barrel of a rifle case in Vaccaro's back seat. Specifically, both officers testified that they observed on Vaccaro's back seat a camouflage-design rifle case that was mostly covered by a jacket. (Tr. 19, 106.)

Vaccaro argues that this testimony is not credible or reliable. I agree. First and foremost, nothing in the officers' conduct on the scene is consistent with having observed a firearm case. Upon allegedly seeing this firearm case, neither officer told each other verbally or signaled to each other their observation. This conduct does not comport or ring true in light of the potential danger the presence of a firearm poses to police officers during a traffic encounter with an unknown citizen. The officers' explanation for this silence ring equally false. Officer Tracy testified that he did not want to tip off Vaccaro of his observation because Vacarro was already "agitated." (Tr. 112.) But without regard to Vaccaro's agitated state, Officer Tracy asked Vaccaro several times whether he had a firearm. After Vaccaro was handcuffed and placed in the back of the squad car, Officer Frantal was alone with

Officer Tracy while he searched the front seat. Even then, neither said anything to each other about observing a rifle case in the back seat.

Additionally, Officer Tracy, who was conducting the search, began his search of the vehicle in the front seat area of the car rather than going to the back seat where he testified he observed the rifle case. This conduct is inconsistent with his testimony of having observed the rifle case. His explanation for starting the search in the front, even after his observation of the rifle case, is also unconvincing. Officer Tracy testified that he began the search in the front of the car because that was his regular method. He also testified that he wanted to be sure not to miss any evidence. Again, given the potential danger firearms poses during a traffic stop, this explanation rings hollow. Moreover, Officer Tracy did in fact stray from his usual method once Officer Frantal alerted him to the rifle in the back. Once told of the rifle in the back, he stopped searching the front and directed his attention to the rifle case in the back.

Finally, it should be noted that when Officer Frantal initially called in the stop, he did not report suspicion of a firearm. He called in a rules-of-the-road violation. To be fair, Vaccaro was stopped for violating the rules of the road. But why not also report the suspicion about the rifle case? Though certainly not dispositive, this also weigh into finding this portion of the officers' testimony, when viewed in light of their conduct in real time on the scene, not credible. Accordingly, I do not credit the officers' testimony that the search of the vehicle was due to the observation of the rifle case. Consequently, I do not find that the alleged observation of the barrel of the rifle justified the search of the vehicle.

The question, then, is whether any of the other factors alone or in combination authorized the search of the vehicle. First, the officers learned from Vaccaro that he was on

supervision for a felony offense. But his status alone cannot justify a search of the vehicle. *United States v. Walden*, 146 F.3d 487, 490 (7th Cir. 1998) (finding that a person's criminal record, alone, cannot be the basis of reasonable suspicion).

Thus, do the furtive gestures toward the front area and then the back seat justify the search of the vehicle? Several Seventh Circuit decisions answer in the affirmative. In *United States v. Evans*, the Seventh Circuit held that police officers had reasonable suspicion to search the passenger compartment of a car because the officers observed the occupant leaning in that direction as if trying to retrieve something from underneath the seat. 994 F.2d 317, 321 (7th Cir. 1993). In *United States v. Denney*, the Seventh Circuit upheld the search of a vehicle finding that the occupant's furtive gestures in "leaning toward the right side of the truck" was reasonably interpreted by the police officers as him reaching for a weapon. 771 F.2d 318, 321 (7th Cir. 1985). In *United States v. Nash*, the Seventh Circuit held that a police officer had reasonable suspicion to be concerned about his safety and search the vehicle because of the driver's furtive gestures upon being stopped. 876 F.2d 1359, 1361 (7th Cir. 1989).

In this case, as I stated earlier, I credit the officers' testimony that they observed Vaccaro moving upon stopping the car. Specifically, Officers Frantal and Tracy testified that Vaccaro made furtive gestures towards the front passenger side as well as to the rear of the vehicle. (Tr. 11, 97-98.) Further, both Officers Frantal and Tracy testified that Vaccaro's furtive gestures made them fear for their safety. (Tr. 15, 98-99.). The observation of the movement is corroborated by Vacaaro's statement to the police that he was removing his coat. Therefore, even without observing the rifle case prior to securing Vaccaro in the squad car, the officers had reasonable suspicion to search the areas of Vacarro's movements—both

12

the front passenger side and the back seat. Accordingly, I find that Vaccaro's Fourth Amendment rights were not violated by the search of his vehicle.

## CONLCUSION

Vaccaro moves to suppress all evidence derived from the pat-down of his person and the subsequent warrantless search of his vehicle. He argues that the police officers did not possess reasonable suspicion to frisk him or search his vehicle. However, both police officers testified to Vaccaro making furtive gestures—bending forward at the waist toward the passenger side and then turning toward the back seat—upon being stopped. The Seventh Circuit has stated that such gestures warrant not only pat-frisks, but also searches of the areas in an automobile where a person is observed moving. As such, the police officers did not violate Vaccaro's constitutional rights by the pat-down search or the search of his vehicle. I recommend Vaccaro's motion to suppress be denied.

**NOW, THEREFORE, IT IS RECOMMENDED** that the Vaccaro's motion to suppress (Docket # 14) be **DENIED**.

Your attention is directed to General L.R. 72(c), 28 U.S.C. § 636(b)(1)(B) and Federal Rules of Criminal Procedure 59(b), or Federal Rules of Civil Procedure 72(b) if applicable, whereby written objections to any recommendation or order herein, or part thereof, may be filed within fourteen days of the date of service of this recommendation or order. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of a party's right to appeal. If no response or reply will be filed, please notify the Court in writing.

Dated at Milwaukee, Wisconsin this 18th day of September, 2017.

                                   BY THE COURT

                                   *s/ Nancy Joseph*
                                   NANCY JOSEPH
                                   United States Magistrate Judge